UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Charles Chandler,                :
        Plaintiff,               :
                                 :
        v.                       :     File No. 1:11-cv-02-jgm
                                 :
Hon. David Suntag, Glen L.       :
Yates, Andrew C. Boxer,          :
Concord Group Insurance          :
Co., Richard M. Kemp,            :
Sharon H. Bjornberg,             :
Campbell and Boyd                :
Insurance Services, and          :
Dennis D. Boyd,                  :
        Defendants.              :

OPINION AND ORDER
(Docs. 6, 11, 14, 15, 31, 35, 41)

Plaintiff Charles Chandler, proceeding *pro se*, claims his
insurer has failed to provide coverage for an accident that
occurred on his property.  Chandler also claims that in the
course of the coverage dispute, Defendants have conspired against
him and have denied him various constitutional rights.
Defendants include state court Judge David Suntag, the Concord
Insurance Group, insurance agents and attorneys.

Defendants have each moved to dismiss the Complaint, and in
some instances have moved in the alternative for summary
judgment.  Citing Chandler's significant litigation history,
Defendants have also asked the Court to enjoin him from
initiating future vexatious litigation.  For the reasons set
forth below, Defendants' motions to dismiss are GRANTED, and

Chandler is ENJOINED from filing any further actions without
receiving leave of the Court.

<u>Factual Background</u>

Chandler alleges that beginning in 2006, he held an
insurance policy issued by Defendant Concord Insurance Group.
The policy was to cover liabilities incurred in relation to his
business, Chandler Electric Company.  In May 2009, Faye Ainsworth
allegedly fell at the Chandler Electric Company premises and
suffered various injuries.  Ainsworth has sued Chandler, and is
seeking substantial damages.  Chandler has admitted liability.

A coverage dispute has arisen between Chandler and his
insurer. The matter is currently being litigated in the state
courts.  Chandler now alleges that prior to and in the course of
the litigation, Defendants engaged a series of wrongful acts,
including breach of the insurance contract and unfair and
deceptive business practices.  As to his federal law claims,
Chandler alleges that Defendants have violated his constitutional
rights and conspired against him in violation of the Racketeering
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §
1961 <u>et</u> <u>seq</u>.

Specifically, Chandler claims that Defendant Andrew Boxer,
relying on "his close relationship with [state court Judge] David
Suntag," threatened to file a "False Complaint" if Chandler did
not withdraw his claim against Attorney Boxer's client, Concord

Insurance Group.  (Doc. 1 at ¶ 6.)[1]  Chandler also alleges that
Attorney Boxer filed false statements about him in a separate
state court action.  Id. at ¶ 7.

    With respect to Judge Suntag, Chandler claims that
"Defendant Suntag illegally uses his position to protect his
Attorney friends regardless of their unethical behavior."  Id. at
¶ 9.  As an example, he claims that Judge Suntag allowed
Defendants Boxer and Yates to serve subpoenas without providing
witness fees.  Chandler also claims that Judge Suntag forced Ms.
Ainsworth to attend a deposition shortly after she had undergone
a spinal injection, and permitted Defendants Boxer and Yates "to
perform [a] Medical examination of [Ms. Ainsworth], against her
will, and despite neither Defendant is a medical Doctor or has
any medical training to perform said diagnosis."  Id.

    Chandler further alleges that Judge Suntag allowed a
"[f]riend" to withdraw a complaint that contained falsehoods, and
allowed another "friend" to assault Chandler in the courthouse.
Id. at ¶ 11.  "Defendant Suntag later rewarded his friend and
split monies that said Defendant illegally received in that
matter."  Id.  Chandler asserts that the Vermont state courts

_____

    [1] The Complaint begins with paragraphs one through ten,
followed by paragraphs six through fifty.  The paragraph
references in this Opinion and Order cite to only the second set
of paragraphs, and not the initial ten.

generally are "gross[ly] dishonest[]," and that he is unable to secure a fair trial in the state court system.  Id. at ¶ 13.

The Complaint sets forth twenty-three "claim[s] for relief." The first fifteen claims assert primarily state law causes of action, including breach of contract, unfair claims practices, and unlawful "seizure of [Chandler's] image."  Chandler also makes non-specific references to violations of "Federal law."

Chandler's sixteenth claim alleges that Judge Suntag violated his First Amendment right petition to the government for relief.[2]  Count Seventeen seeks damages under federal law for "seiz[ure] of Plaintiff's image."  Id. at ¶ 44.  In his eighteenth claim, Chandler asserts Defendants generally denied him his First Amendment right to petition the government when they "would not allow the Plaintiff the right to resolve a Complaint against him and his interstate Company," presumably referring to the liability claim submitted by Ms. Ainsworth.  Id. at ¶ 45.

Count Nineteen alleges that by posing as doctors and asking for allegedly private and protected information in the course of litigation, Defendants violated Chandler's Fourth Amendment right to be free from unreasonable searches and seizures.  Id. at ¶ 46.

_____

[2] Nearly all of Chandler's federal claims seek damages under 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. § 1964, 15 U.S.C. § 1011 and 1012, and 29 U.S.C. § 1144.  These statutory citations, and their application to this case, are discussed in Section III below.

Count Twenty alleges that by collecting insurance premiums, his insurer deprived him of his property without due process of law.

Chandler's twenty-first claim is that Judge Suntag "and his associate Defendants" prevented him from filing a complaint, thereby denying him equal protection of the law in violation of the Fourteenth Amendment.  Id. at ¶ 48.  Count Twenty-Two asserts a similar claim under the RICO statute.  Finally, in Count Twenty-Three, Chandler appears to assert a general civil rights claim against Judge Suntag for ignoring complaints and allowing the other Defendants to perform improper medical examinations.

Defendants have moved to dismiss Chandler's claims, and in some instances have asked in the alternative for summary judgment.  Chandler too has moved for summary judgment.  As noted above, some Defendants have also asked the Court to enjoin Chandler from filing any further vexatious lawsuits, citing his significant history of pro se filings in the state and federal courts.

## Discussion

The Court will first address Defendants' motions to dismiss, and specifically, the viability of Chandler's federal law claims.  The Court undertakes this analysis pursuant to Fed. R. Civ. P. 12(b)(6).

A Rule 12(b)(6) analysis tests the legal, rather than the factual, sufficiency of Chandler's complaint.  See, e.g.,

Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule
12(b)(6) stage, '[t]he issue is not whether a plaintiff is
likely to prevail ultimately, but whether the claimant is
entitled to offer evidence to support the claims.'")
(quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.
1998)).  Accordingly, the Court must accept the factual
allegations in the Complaint as true, Erickson v. Pardus,
551 U.S. 84, 91 (2007), and draw all reasonable inferences
in favor of the Plaintiff.  Bolt Elec., Inc. v. City of New
York, 53 F.3d 465, 469 (2d Cir. 1995).

The Supreme Court has held that the standard governing
a complaint's legal sufficiency is one of "plausibility."
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-60 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
(citing Twombly, 550 U.S. at 556).  The standard does not
require a probability of liability, but "asks for more than
a sheer possibility that a defendant has acted unlawfully."
Id.  Pleadings drafted by a *pro se* party must be liberally

construed.  Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006).

I.  Judge Suntag

Judge Suntag moves to dismiss on the basis of absolute judicial immunity.  Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. Mireles v. Waco, 502 U.S. 9, 11 (1991).  Judicial immunity exists because of the public interest in having judges who are "'at liberty to exercise their functions with independence and without fear of consequences.'"  Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2005) (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)).  Judicial immunity applies even when the judge is accused of acting maliciously or corruptly.  Imbler v. Pachtman, 424 U.S. 409, 419 n.12 (1976) (citing Pierson, 386 U.S. at 553-54).  Indeed, absolute immunity applies "'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'"  Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994) (quoting Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Here, Chandler claims Judge Suntag impeded his right to file complaints, allowed unlawful subpoenas and medical examinations, and permitted Defendants to "report falsehoods to the State of Vermont."  (Doc. 1 at ¶ 50.)  He also alleges Judge Suntag improperly ordered Ms. Ainsworth to attend a deposition.  Each of

these alleged activities – considering complaints, facilitating subpoenas, and permitting certain forms of discovery – involve fundamental judicial functions, and are protected from liability by absolute judicial immunity.  See Mireles, 502 U.S. at 11. Even Chandler's allegations of inappropriate *ex parte* communications and financial agreements are protected.  See, e.g., Dennis v. Sparks, 449 U.S. 24, 27 (1980); Manosh v. Hurd, 2010 WL 1235607, at *1 (N.D.N.Y. March 9, 2010); Kane v. Yung Won Han, 550 F. Supp. 120, 121-22 (E.D.N.Y. 1982).  All claims against Judge Suntag are therefore DISMISSED.

II.  Constitutional Claims

The Court next considers whether Chandler has set forth viable federal constitutional claims.  As discussed above, Chandler alleges the Defendants deprived him of his rights under the First, Fourth and Fourteenth Amendments.  He also sets forth a series of statutory claims.  The Court will first address his civil rights claims.

To state a constitutional civil rights claim under 42 U.S.C. § 1983, as Chandler is trying to do here, a plaintiff must allege conduct by a person acting under color of state law, *i.e.* state action.  See West v. Atkins, 487 U.S. 42, 48 (1988).  "The Supreme Court has explained that '[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to

8

provide relief to victims if such deterrence fails.'" <u>Sybalski</u> <u>v. Indep. Grp. Home Living Program, Inc.</u>, 546 F.3d 255, 257 (2d Cir. 2008) (quoting <u>Wyatt v. Cole</u>, 504 U.S. 158, 161 (1992)). In this case, aside from Judge Suntag, all Defendants are private actors.

Although private individuals cannot generally be held liable under § 1983, "[a] private individual acts under color of law within the meaning of section 1983 when he acts together with state officials or with significant state aid." <u>Kadic v.</u> <u>Karadzic</u>, 70 F.3d 232, 245 (2d Cir. 1995) (citing <u>Lugar v.</u> <u>Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982)); <u>see</u> <u>Khulumani v.</u> <u>Barclay Nat'l Bank Ltd.</u>, 504 F.3d 254, 314 (2d Cir. 2007) (holding that "to find state action, the state must participate in, coerce, or significantly encourage the contested activity") (citation omitted). If a plaintiff is claiming a conspiracy between private and public actors, he must prove "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." <u>Ciambriello v. Cnty. of Nassau</u>, 292 F.3d 307, 324-25 (2d Cir. 2002). Ultimately, the question is whether the conduct that caused the constitutional violation can be "fairly attributable to the state." <u>Spear v. Town of W. Hartford</u>, 954 F.2d 63, 68 (2d Cir. 1992).

Here, Chandler asserts, in largely conclusory fashion, that certain Defendants took advantage of their respective relationships with Judge Suntag.  First, he alleges that Attorney Boxer, "because of his close relationship with David Suntag," threatened to file "a False Complaint" in state court "if the Plaintiff would not withdraw his complaint against his client, Concord [I]nsurance Group."  (Doc. 1 at ¶ 7.)  Chandler next contends Attorneys Boxer and Yates were Judge Suntag's "Attorney friends," and that the Judge "allowed" them (1) to serve subpoenas without providing witness fees, and (2) to perform a medical examination of Ms. Ainsworth.  (Id. at ¶ 9.)[3]

Chandler's allegations of friendships between and a judge and certain attorneys are insufficient for the Court to "fairly attribute" the actions of those attorneys to the state.  Id.  Not only do Chandler's allegations fall well short of the sort of meeting of the minds required for a conspiracy claim; his attempt to attribute certain actions, such as threats of litigation, to those friendships is entirely unsupported.  See Tornheim v. Eason, 175 F. App'x 427, 429 (2d Cir. 2006) (unsupported allegations that ex-wife and her attorney conspired with judge in divorce action to deprive former husband of his rights were

---

[3] Elsewhere in his Complaint, Chandler claims generally that Judge Suntag has allowed his attorney "friends" to physically assault him (Chandler) in the courthouse, steal his money, and provide false information to the court.  (Id. at ¶ 11.)  None of these attorneys are named as defendants in this case.

insufficient to state civil rights claim for state action under §
1983); <u>McKnight v. Middleton</u>, 699 F. Supp. 2d 507, 531 (E.D.N.Y.
2010) (conclusory allegations of *ex parte* communications between
attorney and judge for purpose of denying constitutional rights
falls "far short" of pleading § 1983 claim); <u>cf.</u> <u>Dennis v.</u>
<u>Sparks</u>, 449 U.S. 24, 28 (1980) (noting that "being on the winning
side of a lawsuit does not make a party a co-conspirator or a
joint actor with the judge").

   Chandler has named other private actors in addition to
Attorneys Yates and Boxer.  Those Defendants include an insurance
company (Concord Group Insurance), insurance agencies and
insurance agents.  Although Chandler asserts that these
Defendants have violated his constitutional rights, he does not
claim that they are directly connected to Judge Suntag, or to any
other state actor.  These Defendants thus cannot be found to have
acted under color of state law for purposes of § 1983.  Moreover,
in several instances, his allegations lack substantive merit.

   An example of such a meritless claim is Count Twenty,
wherein Chandler claims that "Agent Defendant Campbell" came to
his home/business and collected insurance premiums.  (Doc. 1 at
16-17.)  Chandler alleges that the collections amounted to theft,
and violated his Fourteenth Amendment right to due process.  The
Complaint asserts state action to the extent that the agent
"claimed a power on the part of the State of Vermont to

[f]raudulently collect monies regulated by the State of Vermont .
. . .'' (Id. at 17.)

The mere fact that an industry is regulated by the state
does not render every act within that industry state action.  See
Sybalski, 546 F.3d at 257-58.  Indeed, it is beyond question that
the collection of premiums by a private insurer or agency is not
"fairly attributable" to the state.  Lugar, 457 U.S. at 937; see
also Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir.
2003) (requiring "such close a nexus between the State and the
challenged action that seemingly private behavior may be fairly
treated as that of the State itself.").  Chandler's claim of a
constitutional violation is therefore without merit.

Chandler also alleges, in Count Seventeen, that Defendants
acted to "seize the Plaintiff's image, humiliate, harass,
intimidate, and deliberately inflict emotional injury upon
Plaintiff which they succeeded in doing."  (Doc. 1 at 15.)  Aside
from Judge Suntag, who is immune from liability for his alleged
actions, there is no suggestion of any state action in this
claim.  Even assuming state action, this Court has held in
several of Chandler's previous cases that such allegations do not
rise to the level of constitutional harm.  See, e.g., Chandler v.
Clark, 2009 WL 2916687, at *7 (D. Vt. Sept. 9, 2009); Chandler v.
Carroll, 2009 WL 2514428, at *4 (D. Vt. Aug. 12, 2009).  The
Court abides by its previous conclusions here.  See Calderon v.

12

<u>Wheeler</u>, 2009 WL 2252241, at *13 (N.D.N.Y. July 28, 2009) ("42
U.S.C. § 1983 is not designed to rectify harassment or verbal
abuse."); <u>Caldarola v. City of Westchester</u>, 142 F. Supp. 2d 431,
441 (S.D.N.Y. 2001) (finding no constitutionally protected
interest in being free from reputational injury).

In Count Twenty-One, Chandler contends that "Defendant
Suntag and his associate Defendants" prevented him from accessing
the courts, thus violated his right to "equal protection of the
laws." (Doc. 1 at 17-18). As with Chandler's other claims,
there is not sufficient factual support for the Court to find
state action.

Furthermore, Count Twenty-One does not set forth a valid
equal protection claim. An equal protection claim must allege
two elements: (1) the plaintiff was treated differently than
others similarly situated, and (2) this differential treatment
was motivated by an intent to discriminate on the basis of
impermissible considerations, such as race or religion, to punish
or inhibit the exercise of constitutional rights, or by a
malicious or bad faith intent to injure the person. <u>Freedom
Holdings, Inc. v. Spitzer</u>, 357 F.3d 205, 234 (2d Cir. 2004);
<u>Diesel v. Town of Lewisboro</u>, 232 F.3d 92, 103 (2d Cir. 2000). A
plaintiff need not necessarily show he is a member of a
particular protected group, so long as he alleges that he has
been "treated differently from other similarly situated and that

there is no rational basis for the difference in treatment."
Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Here, Chandler has not set forth any facts about "others
similarly situated," nor has he alleged facts sufficient to state
a claim of discriminatory intent.  Because Chandler has not set
forth the elements required for an equal protection claim, the
claim cannot proceed.

For each of these reasons, Chandler's § 1983 claims are
DISMISSED.

III.  Other Federal Claims

Chandler's remaining federal claims are plainly without
merit.  He cites 42 U.S.C. § 1985, which requires not only a
conspiracy, but also "some racial, or perhaps otherwise
class-based, invidiously discriminatory animus behind the
conspirators' action."  United Bhd. of Carpenters, Local 610 v.
Scott, 463 U.S. 825, 827 (1983) (quoting 42 U.S.C. § 1985(3)).
Chandler makes no such discrimination claim.

The Complaint also cites the federal RICO statute.  That
statute, at 18 U.S.C. § 1964(c), provides a private right of
action to any person injured in its business or property by
reason of a violation of 18 U.S.C. § 1962.  Section 1962
requires, among other things, a "pattern of racketeering
activity."  See 18 U.S.C. § 1962(a)-(c).  The statutory scheme
defines "racketeering activity" to include "a host of criminal

14

offenses, which are in turn defined by federal and state law." Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc., 187 F.3d 229, 242 (2d Cir.1999) (citing 18 U.S.C. § 1961(1)). To survive a motion to dismiss, the "pattern of racketeering activity" must be "adequately alleged in the complaint." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).

As set forth above, Judge Suntag is entitled to absolute judicial immunity. With regard to the other Defendants, Chandler does not specify in his RICO claim any underlying criminal offenses. Reading the Complaint liberally, Chandler may be claiming that Judge Suntag engaged in a pattern of protecting various attorneys, and that these attorneys relied upon that protection to engage in improper conduct. The only such conduct specifically set forth in the Complaint, however, at least with respect to named Defendants, consists of the actions of Attorneys Yates and Boxer in the course of litigation.

In general, litigation activities do not "properly form the basis for RICO predicate acts." Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010). Here, Chandler contends he was threatened with a false claim if he did not withdraw his allegations against Concord Insurance Group. If such a claim had been filed, Chandler might have been able to set forth a state law cause of action for abuse of process or malicious prosecution. See id.

15

He would not, however, have been able to allege a predicate act for purposes of RICO.  See id. at 171-72 (finding that to allow a malicious prosecution to qualify as a predicate act would lead to "absurd results," including the "inundation of federal courts with civil RICO actions" and would "chill . . . open access to courts").

Furthermore, Chandler's allegations of improper subpoenas and an inappropriate medical examination do not allege the sort of criminal enterprise that would qualify as "racketeering activity."  See Sheridan v. Mariuz, 2009 WL 920431, at *6 (S.D.N.Y. Apr. 6, 2009) ("[A] RICO plaintiff bears the dual burden of pleading both the 'pattern of racketeering activity' and the substantive violations of federal criminal law that comprise the pattern of racketeering activity.").  His claims set forth under the RICO statute are therefore DISMISSED.

Chandler next cites the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 and 1012.  The McCarran-Ferguson Act provides, in part, that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).  In other words, the Act "establishes a form of inverse preemption, letting state law prevail over general federal rules" for purposes of insurance regulation.  NAACP v. American Family

16

Mut. Ins. Co., 978 F.2d 287, 293 (7th Cir. 1992).  This case does not pertain to questions regarding insurance regulation, no preemption issue has been raised, and neither of the cited statutes provides a private right of action.

Chandler also cites 29 U.S.C. § 1144, which is part of the Employee Retirement Income Security Act ("ERISA").  ERISA was enacted to "protect . . . participants in employee benefit plans and their beneficiaries . . . " by establishing uniform regulations and appropriate remedies under federal law.  29 U.S.C. § 1001(b); Montefiore Med. Ctr. v. Teamsters Local 272, 2011 WL 1498823, at *3 (2d Cir. Apr. 21, 2011).  As this case involves a general commercial liability policy, and litigation related to the question of coverage under that policy, ERISA has no application.

Finally, Chandler cites two criminal statutes, 18 U.S.C. § 872 and 18 U.S.C. § 1951.  Section 872 does not apply, as it forbids extortion by officers or employees of the United States, and there are no federal defendants in this case.  18 U.S.C. § 872.  Section 1951 is part of the "Hobbs Act," and pertains to the obstruction of interstate commerce through robbery, extortion or physical violence.  18 U.S.C. § 1951(a).  Although Chandler does not set forth any facts to specifically support his Hobbs Act claim, he may be arguing that the threat of litigation against him, or the refusal to provide coverage and to instead

17

engage in state court litigation, has constituted a form of extortion.  Courts have held, however, that resorting to the legal process does not constitute the sort of conduct covered by the Hobbs Act.  See Leogrande v. Leogrande, 799 F. Supp. 1354, 1362 (E.D.N.Y. 1992) (collecting cases).  Moreover, § 1951 is an exclusively criminal statute, and provides no right of action for private citizens.  John's Insulation Inc. v. Siska Constr. Co., 774 F. Supp. 156, 163 (S.D.N.Y. 1991); see also Bajorat v. Columbia-Breckenridge Dev. Corp., 944 F. Supp. 1371, 1377-78 (N.D. Ill.1996) (collecting cases holding that the Hobbs Act and other criminal statutes do not allow for a private right of action).

Accordingly, each of Chandler's remaining federal claims are DISMISSED.

IV.   State Law Claims

When a federal court has jurisdiction over a case by means of federal claims, it may exercise supplemental jurisdiction over related claims asserted under state law.  See 28 U.S.C. § 1367(a). Once the federal claims are dismissed, however, it may decline to exercise jurisdiction over the state law claims.  Id. at § 1367(c)(3).

In the course of exercising its discretion, a court must balance "judicial economy, convenience, fairness, and comity." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988);

18

see Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446-47 (2d Cir. 1998).  In Cohill, the Supreme Court stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. at 350 n.7; see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . .  [I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

Here, in keeping with the Supreme Court's guidance in Cohill, the Court declines to exercise jurisdiction over Chandler's state law claims.  Indeed, as this case is still in the earliest stages, and the federal law claims are being dismissed well before trial, interests of judicial economy and comity favor dismissal of the state law claims.  Further, all parties are alleged to be in Vermont, thus eliminating convenience as a weighty factor.  With respect to fairness, there does not appear to be any objective impediment, such as an applicable statute of limitations, to Chandler bringing his claims in the state courts.  Accordingly, all of Chandler's state law claims are DISMISSED without prejudice.

V.   <u>Motions To Enjoin Further Vexatious Litigation</u>

Some Defendants have moved for an order barring Chandler from filing any further lawsuits without permission from the Court.  (Docs. 6 and 15.)  The Court's records indicate that Chandler has filed twelve lawsuits here.  Five, including this case, are currently pending.  The other six were dismissed prior to trial.  Defendants report that Chandler has also filed fifteen lawsuits in the state courts.  (Doc. 6 at 2 n.3.)

Several of Chandler's claims in this case are duplicative of claims that he raised in his prior cases.  For example, one of the dismissed actions involved allegations against a state court judge.  As with the claims brought here against Judge Suntag, those allegations were dismissed on the basis of absolute judicial immunity.  <u>See</u> <u>Chandler v. Carroll</u>, 2009 WL 2514428, at *3-*4 (D. Vt. Aug. 12, 2009).  The Court has also previously dismissed claims of equal protection violations, RICO conspiracies, Hobbs Act violations, and "seizure of [plaintiff's] image".  <u>See</u> <u>Chandler v. Clark</u>, 2009 WL 2916687, at *5-*7 (D. Vt. Sept. 9, 2009) (dismissing RICO, Hobbs Act, equal protection, and "image seizure" claims); <u>Carroll</u>, 2009 WL 2514428, at *4-*7 (same); <u>Chandler v. Albright</u>, 2009 WL 2516114, at *4-*5 (D. Vt. Aug. 12, 2009) (dismissing "image seizure" and equal protection claims).

In the face of "multiplicitous" and/or "baseless" litigation, "[a] district court not only may but should protect its ability to carry out its constitutional functions." Safir v. United States Lines Inc., 792 F.2d 19, 23 (2d Cir. 1986) (quoting Abdullah v. Gatto, 773 F.2d, 487, 488 (2d Cir. 1985)).  The Second Circuit has instructed district courts to consider the following factors when deciding whether to enjoin the filing of future lawsuits:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Id. at 24.

Chandler has a lengthy history of suing attorneys, judges and law enforcement officials, as well as private actors.  His lawsuits raise duplicative claims that have been uniformly unsupported.  Having been repeatedly denied the same causes of action, he cannot now have an objective good faith expectation of prevailing on such claims.

There can be little question that Chandler's litigation activities have "caused needless expense to other parties" and have "posed an unnecessary burden on the courts and their

personnel." Id.  His many repetitive claims have required significant research and discussion by both the parties and the Court.  Given that all of Chandler's cases have been dismissed as a matter of law, it is now clear that those efforts created unnecessary burdens for defendants and their attorneys, as well as the Court and Court personnel.

In light of Chandler's proclivity for filing meritless and resource-consuming claims, and having considered lesser sanctions, the Court sees no alternative but to bar him from filing any further cases without obtaining leave from the Court. Accordingly, if Chandler wishes to commence an action in this Court in the future, he must file with his proposed complaint a motion for leave to file.  The motion will be reviewed by the Court, and if it appears that the proposed action is duplicative, meritless, frivolous, malicious, intended to harass, delusional, or otherwise barred, leave to file will be denied.

<u>Conclusion</u>

For the reasons set forth above, Defendants' motions to dismiss (Docs. 6, 11, 14, 31 and 35) are GRANTED.  Chandler's motion for summary judgment (Doc. 41) and Defendants' motions to stay discovery (Docs. 6 and 15) are DENIED as moot.  Chandler's federal law claims are DISMISSED with prejudice, and his state law claims are DISMISSED without prejudice.

Defendants' motions to enjoin Chandler from filing further lawsuits in this Court (Docs. 6 and 15) are GRANTED.  Chandler may not file any further complaints in this Court without receiving prior leave from the Court.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 28th day of June, 2011.


/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
District Judge